**Maldari v Metropolitan Transp. Auth.**

2025 NY Slip Op 31616(U)

May 5, 2025

Supreme Court, New York County

Docket Number: Index No. 154837/2024

Judge: Richard Tsai

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. RICHARD TSAI**                          PART                          21
*Justice*

-----------------------------------------------------------------------X

JOSEPH MALDARI

INDEX NO.          154837/2024

Petitioner,

MOTION DATE        01/02/2025

- v -

MOTION SEQ. NO.        001

METROPOLITAN TRANSPORTATION AUTHORITY,

Respondent.

**DECISION, ORDER +
JUDGMENT ON PETITION**

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document numbers (Motion 001) 1-16

were read on this petition for                          LEAVE TO FILE                          .

In this proceeding, petitioner Joseph Maldari seeks leave to serve a late notice of claim upon respondent Metropolitan Transportation Authority (MTA).  Respondent opposes the petition.

## BACKGROUND

Petitioner alleges that, on October 16, 2023 at approximately 10:00 a.m., he was injured while working as an LIRR conductor on an Eastbound Long Beach LIRR Train between Jamaica Station and Valley Stream Station, New York, when he was assaulted and battered by a passenger who refused to pay his fare, became argumentative, and followed petitioner when petitioner attempted to leave (*see* verified petition [NYSCEF Doc. No. 1] ¶ 3).

As alleged in the petition, petitioner asked for help from a NYPD police officer, who intervened, and a struggle ensued between the police officer and the passenger (*id.*).  Petitioner allegedly came to the assistance of the police officer, pulling the passenger off the officer (*id.*).  The police officer allegedly drew his weapon upon the passenger until other help arrived at the Valley Stream station (*id.*).

Petitioner seeks leave to serve a late notice of claim upon respondent Metropolitan Transportation Authority  (MTA), which alleges "failure of MTA PD to enforce . . . the policies of the MTA-LIRR that prohibit assault/battery upon uniformed MTA-LIRR train crew;" and  "Inadequate MTA PD presence upon MTA-LIRR trains," among other things (Exhibit 1 in support of petition, proposed notice of claim [NYSCEF Doc. No. 4].  The proposed notice of claim alleges that petitioner suffered, among other injuries, "PTSD"; "Anxiety, Depression, Sleep Disturbance, Breathing Difficulties, Heart Palpitations" (*id.*).

[* 1]

Pursuant to this court's interim order of October 1, 2024, respondent turned over an MTA Police Department Incident report which stated that, on the date of the accident, at approximately 8:25 a.m., MTA police officers responded to a "[p]possible assault in progress on board 814 into Valley Stream" and met with petitioner (petitioner's exhibit 1 [NYSCEF Doc. No. 13], MTA Police Report at 3 of 9).

According to the MTA Police Report, petitioner advised the responding officers that he was attempting to collect a fare from a ticketless passenger—who would later be identified as Sterling Moore—when Moore "began to behave in a belligerent manner and walk towards the conductor in a threatening manner" (*id.* at 4 of 9). Petitioner summoned the assistance of an off-duty NYPD officer sitting nearby, named Daniel Meany (*id.*). According to the MTA Police Report, Meany identified himself as a police officer to Moore, and Moore "began swinging at him with closed fists" (*id.*). The MTA Police Report states that the fight lasted "approximately one minute" and that Moore "began to over power Officer Meany" (*id.*). The MTA Police report notes that during the fight Meany's "weapon became dislodged from his waistband" but that Meany subsequently "recovered and secured his firearm" (*id.*).

Per an LIRR "Employee Accident / Incident Investigation" report, which was also disclosed pursuant to this court's interim order, petitioner stated that when the situation escalated, Meany "requested my assistance and I complied by briefly holding the young man by his leg" (petitioner's exhibit 2 [NYSCEF Doc. No. 14], LIRR Report at 5 of 12). According to the LIRR Report, Meany then "drew his weapon and the young man calmed down" (*id.*).

The MTA Police report states that Moore was then taken into custody by uniformed officers when the train pulled into the Valley Stream station (MTA Police Report at 4 of 9). Per the MTA Police Report, Moore was "charged with NYPL 120.05 sub3. Assault in the second degree" (*id.*).

According to the MTA Police Report, petitioner was initially being transported to give a statement, but then indicated that "he was feeling very anxious about the incident and possibly going to have a panic attack. [A]n ambulance was requested to meet the witness at district 2 Bethpage. Mr Maldari was removed to Plainview Hospital by Nassau County EMT Doucette shield #66" (*id.*).

The MTA Police Report concludes:

"Upon further investigation by MTA detectives Hansen and Victoria it was determined that Mr. Sterling did have an arrest warrant for MTAPD Warrant to be included with arrest package.

Sterling Moore has had 9 prior contacts with the MTA Police Department" (*id.*).

154837/2024   MALDARI, JOSEPH vs. METROPOLITAN TRANSPORTATION AUTHORITY          Page 2 of 7
Motion No.  001

2 of 7

[* 2]

Pursuant to this court's interim order, MTA also provided video footage of the incident to petitioner and this court (*see* petitioner's exhibit 3a [NYSCEF Doc. No. 15], MTA Cover Letter Transmitting Video Files to Judge Tsai; petitioner's exhibit 3b [NYSCEF Doc. No. 16], Court's Confirmation of Receipt of Video Files).

The video submitted to the court contains footage from 18 different camera angles, and all of the footage is without sound except for footage of the conductor's cabin captured from two camera angles. In addition to corroborating the happening of the accident as described in the petition, the MTA Police Report and the LIRR Incident Report, the video also captures footage, with audio, of petitioner calling for assistance from the conductor's cabin. During the call, petitioner stated that "we are in desperate need of assistance" due to a passenger having assaulted both himself and Meany (surveillance video 9162 Camera 2 X0840-1-21 starting at 8:20, 8:25 a.m.). When asked if anyone on the train required medical assistance, petitioner stated that medical assistance was not necessary (*id.* at 8:20 a.m.).

## DISCUSSION

Where an action against the MTA is founded on a tort (except for wrongful death), Public Authorities Law § 1276 (2) requires service of a notice of claim upon the MTA, prior to the commencement of the action, "within the time limited by and in compliance with all of the requirements of section [50-e] of the general municipal law."

"The purpose of the notice of claim is to alert the municipality to the existence of the claim so that it can promptly investigate and preserve any relevant evidence before the passage of time renders such evidence unavailable or lessens its probative value" (*Matter of Jaime v City of New York*, 41 NY3d 531, 539-40 [2024]).

Under General Municipal Law § 50-e (5), courts have discretion to grant an extension of time for service of a notice of claim. "The burden of production is on the petitioner in a special proceeding, and the court applies settled summary judgment standards, under which the party seeking relief must establish entitlement to judgment as a matter of law by submitting admissible evidence" (*id.* at 542 [internal citations and quotations omitted]).

"In determining whether to grant or deny leave to serve a late notice of claim, the court must consider 'in particular' whether the municipality 'acquired actual knowledge of the essential facts constituting the claim within [90 days of the claim's accrual] or within a reasonable time thereafter.' Courts are to place 'great weight' on this factor, which the party seeking leave has the burden of establishing through the submission of nonspeculative evidence" (*id.* at 540 [internal citations omitted]).

"Additionally, the statute requires the court to consider 'all other relevant facts and circumstances' and provides a 'nonexhaustive list of factors that the court should

**154837/2024   MALDARI, JOSEPH vs. METROPOLITAN TRANSPORTATION AUTHORITY**         **Page 3 of 7**
**Motion No.  001**

[* 3]

weigh'. One factor the court must consider is 'whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits'" (*Matter of Newcomb v Middle Country Cent. School Dist.*, 28 NY3d 455, 460-461 [2016] [internal citation omitted]).

The Appellate Divisions have held that courts must also consider whether petitioner has a reasonable excuse for the delay, but the "failure to offer a reasonable excuse is not necessarily fatal" (*Clarke v New York City Tr. Auth.*, 222 AD3d 552, 553 [1st Dept 2023]; *Guerre v New York City Tr. Auth.*, 226 AD3d 897, 898 [2d Dept 2024]). "[W]here there is actual notice and absence of prejudice, the lack of a reasonable excuse will not bar the granting of leave to serve a late notice of claim" (*Guerre*, 226 AD3d at 898 [quotation marks and citation omitted]). Thus, petitioner essentially needs to prove only the actual knowledge and substantial prejudice factors to be entitled to leave to serve a late notice of claim.

### Reasonable excuse

Here, petitioner asserts that he did not timely file a notice of claim because he believed that he "would soon get better and return to work", and it was only until later that it "became clear to me that I could never again feel safe working for the railroad as a conductor" and sought legal representation (petition [NYSCEF Doc. No. 1] ¶ 5).

This, however, does not constitute a reasonable excuse (*Gomez v City of New York*, 250 AD2d 443, 443 [1st Dept 1998] [rejecting the petitioner's argument that "her lateness should be excused because she did not realize the severity of her injury, and therefore did not hire an attorney, until advised of the need for surgery four and a half months after the accident"]; *Gaudio v City of New York*, 235 AD2d 228, 228 [1st Dept 1997] [same]).

### Actual knowledge of the essential facts

Petitioner argues that respondent acquired actual knowledge of the essential facts constituting his claim through his reporting of the incident, the MTA Police Department's response and arrest of Moore, and the subsequent investigations of the incident by the MTA Police Department and the LIRR. Respondent contends that although "respondent promptly investigated the subject incident, the investigation of the incident is insufficient for the Court to find that the respondent should have had knowledge of potential claim for psychological injuries" (affirmation of respondent's counsel in opposition to motion [NYSCEF Doc. No. 5] ¶ 13).

"The actual knowledge requirement contemplates actual knowledge of the essential facts constituting the claim, not knowledge of a specific legal theory" (*Matter of Townson v New York City Health & Hosps. Corp.*, 158 AD3d 401, 403 [1st Dept 2018]; *Matter of Grande v City of New York*, 48 AD3d 565 [2nd Dept 2008]). However, "knowledge of the facts underlying an occurrence does not constitute knowledge of the claim. What satisfies the statute is not knowledge of the wrong. What the statute exacts

154837/2024   MALDARI, JOSEPH vs. METROPOLITAN TRANSPORTATION AUTHORITY                Page 4 of 7
Motion No.  001

4 of 7

[* 4]

is notice of [the] 'claim'" (*Chattergoon v New York City Hous. Auth.*, 161 AD2d 141 [1st Dept 1990], *affd Matter of Chattergoon v New York City Hous. Auth.*, 78 NY2d 958 [1991]; *see also Bullard v City of New York,* 118 AD2d 447 [1st Dept 1986]). "The statute contemplates not only knowledge of the facts, but also how they relate to the legal claim to be asserted" (*Carpenter v City of New York*, 30 AD3d 594, 595 [2d Dept 2006]). Actual knowledge of the facts underlying the claim includes knowledge of the injuries or damages (*Arnold v Town of Camillus*, 222 AD3d 1372, 1377 [4th Dept 2023]).

Respondent relies heavily on *Chattergoon* (161 AD2d at 142) in arguing that it lacked notice because its investigation of the incident was "geared toward" a criminal prosecution of Moore "and not toward preparation of a possible claim" by petitioner; affirmation of respondent's counsel in opposition ¶¶ 12-13).

However, the MTA Police Report nonetheless made a point of noting that petitioner was placed in an ambulance and transported to the hospital because "he was feeling very anxious about the incident and possibly going to have a panic attack" (MTA Police Report at 4 of 9).

Furthermore, the LIRR Report on its face appears to be "geared toward" the possibility of a claim from petitioner (*Chattergoon*, 161 AD2d at 142), as, in addition to describing the incident where petitioner was assaulted, it notes among other things: 1) that petitioner was "traumatized while performing a pickup lift on train 814"; 2) that the "Initial/On-scene Medical Classification" was "Hospital/Medical Facility"; 3) that the following day, October 17, 2023, was the "first full day that the employee was unable to work due to this injury"; 4) that petitioner "Lost Consciousness"; that no "immediate corrective actions" were required and a "Trouble Ticket" was not issued; and 5) "employee was unable to be counseled" in a cell titled "Provide Details of the Recommended Corrective/Remedial/Actions" (LIRR Report at 1-11).

The MTA Police Report, LIRR Report, and the surveillance video provided respondent "with timely, actual knowledge of the essential facts constituting the claim," including a claim that petitioner allegedly suffered psychological injuries (*see Dubuche v New York City Tr. Auth.*, 230 AD3d 1026, 1027 [1st Dept 2024] ["Where the facts upon which the municipality's liability is predicated are discernable from the report of an accident, actual knowledge will be imputed to the municipality"] [internal quotation marks omitted]; *Talavera v New York City Tr. Auth.*, 228 AD3d 446 [1st Dept 2024] ["Moreover, neither party disputes that respondents were aware of the accident, which was witnessed by the train conductor and investigated by a New York City police officer in the transit branch. Thus, respondents had the opportunity to timely investigate the essential facts"]; *Clarke v New York City Tr. Auth.*, 222 AD3d 552, 553 [1st Dept 2023] [holding that lower court should have allowed late notice of claim where "the record showed, the accident involved an NYCTA-owned bus and an NYCTA driver, and was immediately investigated by an NYCTA supervisor"]).

Thus, even if the investigation was "undoubtedly focused primarily" on the criminal nature of Moore's assault, it "provid[es] respondent with actual knowledge of

154837/2024   MALDARI, JOSEPH vs. METROPOLITAN TRANSPORTATION AUTHORITY          Page 5 of 7
Motion No.  001

5 of 7

[* 5]

the underlying facts that form the basis for petitioner's claim" (*Chattergoon v New York City Hous. Auth.*, 197 AD2d 397, 398 [1st Dept 1993] [affirming the motion court's granting of the petitioner's motion to renew his application for leave to serve a late notice of claim, and, upon renewal, granting the application]).

Substantial prejudice

"[T]he burden initially rests on the petitioner to show that the late notice will not substantially prejudice the public corporation. Such a showing need not be extensive, but the petitioner must present some evidence or plausible argument that supports a finding of no substantial prejudice" (*Matter of Newcomb*, 28 NY3d at 466).

For example, if a transitory condition allegedly caused the petitioner's injuries, a petitioner demonstrates lack of prejudice if the condition would no longer have existed even if timely service had been made (*see Camins v New York City Hous. Auth.*, 151 AD3d 589, 590 [1st Dept 2017]; *Matter of Rivera v City of New York*, 127 AD3d 445, 446 [1st Dept 2015]). Or, if a premises condition had not changed since the date of the alleged accident, such that an investigation would still be possible despite the late notice (*Fredrickson v New York City Hous. Auth.*, 87 AD3d 425, 425 [1st Dept 2011]).

"Once this initial showing has been made, the public corporation must respond with a particularized evidentiary showing that the corporation will be substantially prejudiced if the late notice is allowed" (*Matter of Newcomb*, 28 NY3d at 467). "Substantial prejudice may not be inferred solely from the delay in serving a notice of claim" (*id.* at 468 n 7).

Here, petitioner has established that respondent will not be prejudiced because the extensive records of investigation concerning the subject incident indeed document that respondent in fact "promptly investigate[d] and preserve[d] any relevant evidence before the passage of time render[ed] such evidence unavailable or lessen[ed] its probative value" (*Matter of Jaime*, 41 NY3d at 539-540).

In opposition, respondent makes no argument that it would be prejudiced if the late notice is allowed.

Thus, the court finds that the respondent will not be prejudiced by allowing the late notice of claim.

Therefore, notwithstanding that petitioner did not present a reasonable excuse for failing to timely serve a notice of claim, petitioner's application for leave to serve a late notice of claim is granted, given that respondent timely acquired actual knowledge of the essential knowledge of the essential facts constituting his claim and because respondent will not be substantially prejudiced by this court allowing the late notice of claim (*Mann v Erie County Med. Ctr. Corp.*, —AD3d—, 2025 NY Slip Op 02434 [4th Dept 2025] ["Although claimant failed to demonstrate a reasonable excuse for failing to serve a timely notice of claim, that failure is not fatal where actual notice was had and

**154837/2024   MALDARI, JOSEPH vs. METROPOLITAN TRANSPORTATION AUTHORITY**          **Page 6 of 7**
  **Motion No.  001**

6 of 7

there is no compelling showing of prejudice to respondents"] [internal emendation, quotation marks and citations omitted]).

## CONCLUSION

Accordingly, upon he foregoing documents, it is **ADJUDGED** that the petition by Joseph Maldari for leave to serve a late notice of claim in the form of the proposed notice of claim annexed to the petition as Exhibit 1 (NYSCEF Doc. No. 4) upon respondent Metropolitan Transportation Authority is **GRANTED**; and it is further

**ADJUDGED** that such a notice of claim will be deemed timely served, nunc pro tunc, upon respondent Metropolitan Transportation Authority upon service of a copy of this decision, order, and judgment with notice of entry; and it is further

**ORDERED** that petitioner shall commence an action and purchase a new index number in the event a lawsuit arising from this notice of claim is filed; and it is further

**ORDERED** that, within 30 days after entry of this decision and order, petitioner's counsel is directed to retrieve the flash drive containing video footage from IAS Part 21, 80 Centre Street Room 280 and to preserve the video footage intact pending the outcome of any appeal of this decision, order, and judgment, or if no appeal is taken, until after the time to appeal from this decision and order has expired.

This constitutes the decision, order and judgment of the court.

20250505131633RTSAIBB78027A76AE4F52B98537620062B280

| _____ |  | _____ |
| **5/5/2025** |  | **RICHARD TSAI, J.S.C.** |
| **DATE** |  |  |

| CHECK ONE: | X | CASE DISPOSED |  |  | NON-FINAL DISPOSITION |  |  |
|---|---|---|---|---|---|---|---|
|  | X | GRANTED |  | DENIED | GRANTED IN PART |  | OTHER |
| APPLICATION: |  | SETTLE ORDER |  |  | SUBMIT ORDER |  |  |
| CHECK IF APPROPRIATE: |  | INCLUDES TRANSFER/REASSIGN |  |  | FIDUCIARY APPOINTMENT |  | REFERENCE |

**154837/2024   MALDARI, JOSEPH vs. METROPOLITAN TRANSPORTATION AUTHORITY**
**Motion No.  001**

Page 7 of 7

7 of 7

[* 7]